UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 11-20493
                                    Hon. Mark A. Goldsmith

vs.

LEON ANTONIO JOHNSON, JR.,

        Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 378)**

Defendant Leon Antonio Johnson, Jr. pleaded guilty to conspiracy to possess with intent to distribute and to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, 841(b)(1)(A)(I) and 851.  See Judgment (Dkt. 282).  On August 28, 2014, Judge John Corbett O'Meara sentenced Johnson to 120 months' imprisonment.  Id.[1]  Johnson began serving his custodial sentence on February 2, 2015.  He is now incarcerated at the Federal Correctional Institution (FCI) in Morgantown, West Virginia.  Johnson's projected release date is February 2, 2023.

On January 13, 2021, Johnson filed the instant motion for compassionate release asking the Court "to extend humanitarian relief to his family and him in the detrimental wake of [COVID-19]."  Def. Mot. at 1 (Dkt. 378).  Johnson argues that release is warranted because he is at high risk for severe illness from COVID-19 due to his weight (BMI above 30), his arthritis, his status as a smoker, his age (45), and his race (Black).  Id. at 8-10.  According to Johnson, he was

_____

[1] This case was reassigned to the undersigned on January 12, 2018.

diagnosed with COVID-19 on November 30, 2020 and is thus at risk of contracting COVID-19 a second time.  Id. at 8.  Johnson separately argues that release is warranted to permit him to care for his elderly parents who are "in need of his physical support at home and mental inspiration." Id. at 11.  In addition to seeking compassionate release, Johnson asks the Court to order that his current 120-month sentence be run concurrently with a separate 30-month sentence for violation of supervised release or, alternatively, that he be given a 30-month credit against his current sentence.  Id. at 19.  For the reasons that follow, the Court denies Johnson's motion.

## I.    BACKGROUND

From August 2010 to July 2011, Johnson participated in a conspiracy to distribute heroin and cocaine in the Detroit, Michigan and Youngstown, Ohio areas.  Plea Agreement at 2 (Dkt. 254).  Judge O'Meara sentenced Johnson to 120 months for his role in this conspiracy.  See Judgment.  This was not Johnson's first drug trafficking conviction.  He previously pleaded guilty to several drug related offenses in a case before Judge Lawrence Zatkoff.  United States v. Johnson, Case No. 05-cr-80810-14 (E.D. Mich.).  On December 14, 2006, Johnson was sentenced to 36 months' imprisonment followed by three years' supervised release.  See 12/14/2006 Judgment (Case No. 05-cr-80810-14, Dkt. 411).  When Johnson was indicted in the instant case, he was found to have violated the terms of his supervised release; accordingly, Judge Zatkoff sentenced him to thirty months' imprisonment.  See 4/20/2012 Judgment (Case No. 05-cr-80810-14, Dkt. 571).

On May 4, 2020, Johnson sent a request for compassionate release to the warden of FCI Morgantown, Warden Bowers.  See Request for Release and Denial, Ex. A to Gov. Resp. (Dkt. 387-2).  Johnson's request sought release "to extend humanitarian relief to [Johnson's] family and him in the wake of [COVID-19]."  Id. at PageID.2008.  Johnson provided that his family "is in

need of his physical support and mental inspiration," and that "Mr. Johnson['s] life is also in immediate threat from being in a high vulnerable risk of contracting the COVID-19 in an open bay cubical dorm housing unit," and social distancing "is impossible to practice." Id. at PageID.2008-2009.  In a response dated May 15, 2020, Warden Bowers denied Johnson's request.  Id. at PageID.2011.  On June 1, 2020, Johnson filed an appeal to the Bureau of Prisons ("BOP") Mid-Atlantic regional office.  Regional Appeal and Denial, Ex. B to Gov. Resp. (Dkt. 387-3).  On June 30, 2020, Johnson refiled the regional appeal.  See id. at PageID.2013.  In a response dated October 1, 2020, the regional director denied Johnson's appeal, explaining that, although Johnson was "requesting to be considered for Compassionate Release because of the COVID-19 pandemic and health concerns," he was "Healthy, Simple Chronic Care, and are classified as a Medical Care Level I" and thus did "not meet the criteria for Compassionate Release." Id.  On October 21, 2020, Johnson filed an appeal to the BOP central office.  Central Office Appeal and Denial, Ex. C to Gov. Resp. (Dkt. 387-4).  In a response dated January 29, 2021, the BOP administrator of national inmate appeals denied Johnson's appeal.  Id. at PageID.2015.

## II.   LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences.  United States v. Ruffin, 978 F.3d 1000, 1003-1004 (6th Cir. 2020).  Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101

(6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

Although courts are not required to consider § 1B1.13 in ruling on compassionate release motions brought directly by inmates, United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021), § 1B1.13 still provides a useful working definition of "extraordinary and compelling reasons," and thus may be consulted to "guide discretion without being conclusive," United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (citing Gall v. United States, 552 U.S. 38, 49-50 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)). In the commentary to § 1B1.13, the Sentencing Commission has enumerated several extraordinary and compelling reasons justifying a reduction of sentence, including the "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). Some examples of compelling reasons are medical conditions "with an end of life trajectory," a defendant's serious physical deterioration related to the aging process, and death or incapacitation of a caregiver of a defendant's minor child or children. Id. The Guidelines also contemplate "Other Reasons" where the defendant has "extraordinary and compelling reasons other than, or in combination with," the other enumerated reasons. U.S.S.G. 1B1.13 cmt. n.1(D).

4

### III. ANALYSIS

#### A. Exhaustion

Before seeking compassionate release from federal courts, prisoners must "fully exhaust[] all administrative rights," or, alternatively, wait for 30 days after the warden's "receipt of [their] request." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that there are no statutory exceptions to this exhaustion requirement. United States v. Alam, 960 F.3d 831, 835-836 (6th Cir. 2020).

As another court within this district has held, "[w]here the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts." United States v. Asmar, 465 F. Supp. 3d 716, 719 (E.D. Mich. 2020) (citations omitted). In this case, the Government concedes that Johnson requested compassionate release from the Warden, but argues that Johnson nevertheless failed to comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement because Johnson's request to the Warden did not reference "his alleged obesity or arthritis, his history as a smoker . . . , and their relationship to the risk of contracting a severe illness from the virus that causes COVID19." Gov. Resp. at 16 (Dkt. 387). Rather, the Government argues, "Johnson's request to the Warden seeking compassionate release focused on the generalized danger of COVID-19 in "open bay cubical dorm housing" and the difficulties practicing social distancing while incarcerated." Id.

The Court disagrees. In both in his motion for compassionate release before this Court and his request to the Warden, Johnson seeks "to extend humanitarian relief to [Johnson's] family and him in the wake of [COVID-19]." Compare Request and Denial at PageID.2008, with Def. Mot. at 1. In his request, Johnson provided that his family "is in need of his physical support and mental inspiration." Id. He similarly seeks release in the present motion for compassionate release to permit

him to care for his elderly parents who are "in need of his physical support at home and mental inspiration." Def. Mot. at 11. Further, Johnson provided in his request that his "life is also in immediate threat from being in a high vulnerable risk of contracting the COVID-19 in an open bay cubical dorm housing unit . . . ." Request and Denial at PageID.2008-2009. The fact that Johnson explicitly sets forth his health conditions in his motion for compassionate release does not mean that the factual bases in his request to the Warden and motion before this Court differ. Rather, this merely means that Johnson describes how he is allegedly high-risk for contracting the virus with greater clarity in his motion for compassionate release. The BOP clearly understood Johnson's request to be seeking compassionate release on the basis of his health, as evidenced by the regional director's statement that Johnson was "requesting to be considered for Compassionate Release because of the COVID-19 pandemic and health concerns." Regional Request and Denial at PageID.2013.

The Court concludes that Johnson properly exhausted his administrative remedies with the BOP by requesting compassionate release from the Warden based on health and familial concerns related to COVID-19. Accordingly, the Court will assess the merits of Johnson's motion for compassionate release. For the following reasons, the Court denies Johnson's motion on the merits.

### B. Extraordinary and Compelling Circumstances

Johnson argues that his risk of reinfection and desire to care for his elderly parents present extraordinary and compelling reasons for his release. The Court addresses each argument in turn and concludes that neither Johnson's potential risk of reinfection nor his familial circumstances warrant release. Even if they did, the § 3553(a) factors weigh against granting release.

### i. Risk of Reinfection

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-

6

19, without more, do not constitute a compelling reason" to grant compassionate release.  United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).  Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus.  To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control ("CDC").  See Elias, 984 F.3d at 521.

Because Johnson has already contracted and recovered from COVID-19, the relevant inquiry is whether Johnson has a high risk of reinfection.  According to current CDC guidance, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[2]  Although "the probability of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants," an "increasing number of published studies suggest that," presently, ">90% of recovered COVID-19 patients develop anti-SARS-CoV-2 antibodies" and "[a]dditional studies also demonstrate antibody response . . . can be durable for 6 months or more."[3]  Based on the CDC's guidance, other courts have held that the low risk of reinfection is not an extraordinary and compelling reason warranting release.  See, e.g., United States v. Jackson, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021); United States v. English, No. 19-20164, 2021 WL 267774, at *2 (E.D. Mich. Jan. 27, 2021).  This Court will follow suit.

Johnson has already been infected with COVID-19 and recovered from it.  Fortunately, because Johnson was infected just a few months ago, he should remain immune for several more

---

[2] "Reinfection with COVID-19" (CDC), https://perma.cc/2KJJ-G8TK.

[3] "Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19" (CDC), https://perma.cc/VGA8-JQF6.

months.  The Government expects that Johnson will be vaccinated while he is still immune.  <u>See</u> Gov. Resp. at 21.  Johnson's low risk of reinfection before being vaccinated cannot support a finding of extraordinary and compelling reasons for compassionate release at this time.  Even if Johnson is not vaccinated as quickly as the Government anticipates, the Court finds that granting release is still unwarranted at this time.  This is because, in order to release Johnson presently, the Court "would need to speculate as to whether there is a medically recognized possibility of becoming re-infected with COVID-19, and if there is, whether he would likely contract the disease once again."  <u>United States v. Benson</u>, No. 03-80139, 2021 WL 527280, at *2 n.1 (E.D. Mich. Feb. 12, 2021).

**ii.    Johnson's Elderly Parents**

Johnson also seeks release so that he may care for his parents, whom he describes as "elderly" and "in need of his physical support at home and mental inspiration."  Def. Mot. at 11. However, "simply having an elderly parent who may need assistance, and may be susceptible to COVID-19, is not, by itself, exceptional and does not justify early release."  <u>Benson</u>, 2021 WL 527280, at *2 n.1.

Further, releasing an inmate to provide care for a parent is unwarranted if the record lacks sufficient details regarding the inmate's parent's current care arrangements and information that the inmate's "help is truly needed."  <u>United States v. Woolfork</u>, No. 19-12, 2021 WL 210451, at *3 (S.D. Ohio Jan. 21, 2021).  Johnson does not specify his parents' current care arrangements. Nor does he specify what, if any, ailments his parents may be experiencing that prevent them from being able to care for themselves and each other.  In addition, Johnson provides only minimal information regarding other potential caretakers.  According to Johnson, his four adult children are unable to help take care of Johnson's parents because his children are essential workers and thus

are at risk of exposing his parents to the virus.  Def. Mot. at 11.  Johnson does not address, however, whether any other family members, friends, or community members may be available to care for his parents.  Thus, the record contains insufficient information to determine whether Johnson's help is truly needed.

The hardship to Johnson's family that may result is unfortunate, but certainly not extraordinary.  "A crime often inflicts harm, not only on a direct victim, but on those in a defendant's circle of family and friends who depend on that defendant for all manner of support." United States v. Cole, No. 18-20237, 2021 WL 194194, at *3 (E.D. Mich. Jan. 20, 2021).  For the foregoing reasons, the Court finds that Johnson has not shown any extraordinary and compelling reasons that warrant granting his motion for compassionate release.

### C.  Section 3553(a) Factors

The § 3553(a) factors also weigh against granting Johnson release or a sentence reduction. Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.  Johnson's crime was serious, as it involved the distribution of heroin and cocaine, which are classified as Schedule I and Schedule II controlled substances due to their high abuse risk.  And, as discussed above, Johnson has committed more than one drug trafficking offense.  The fact that Johnson violated the terms of his supervised release for his first drug trafficking offense by committing the instant drug trafficking offense raises serious doubts regarding his ability to be deterred from committing future crimes.

Johnson has established, through the instant offense and criminal history, that he is a danger to the community.  If released at this time, there is a real possibility that he would commit more

crimes, specifically drug trafficking.  Granting Johnson compassionate release would not promote respect for the law or protect the public from further crimes by Johnson.  Further, FCI Morgantown, the facility at which Johnson is incarcerated, currently has only one confirmed inmate case and five staff cases of COVID-19.[4]  For these reasons, the § 3553(a) factors weigh against granting Johnson's motion for a compassionate release.

### D.  Request to Run Sentences Concurrently or Award Credit

In addition to seeking compassionate release, Johnson asks the Court to order that his current 120-month sentence be run concurrently with his 30-month sentence for violation of supervised release or, alternatively, to award him a credit of 30 months against his current sentence. Def. Mot. at 19.

In 2017, Johnson filed motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) in which he sought the same relief that he now seeks (Dkt. 338).  The Court denied Johnson's 2017 motion, explaining that "the Court is without jurisdiction to award a defendant credit for time served" because "[t]his responsibility lies with the Bureau of Prisons."  8/10/18 Opinion at 3 (Dkt. 346) (citing United States v. Noel, 372 F. App'x 586, 590 (6th Cir. 2010)).  Because Johnson argued that he was unable to seek an administrative remedy through the BOP, the Court further explained that the proper means for Johnson to seek relief was to "file a motion pursuant to 28 U.S.C. § 2241, and name his custodian—that is, the warden at his federal institution—as the respondent."  Id. at 4 (citing Charles v. Chandler, 180 F.3d 753, 756 (6th Cir. 1999); Roman v. Ashcroft, 340 F.3d 314, 320 (6th Cir. 2003)).  Johnson represents that, following the Court's August 10, 2018 opinion, he filed a § 2241 motion that is "currently awaiting decision" from the United States District Court for the Northern District of West Virginia.  Def. Mot. at 20-21.

---

[4] "COVID-19 Cases" (BOP), https://perma.cc/C7SJ-3ZXX.

In light of this history, it is unclear why Johnson has again asked this Court to reduce his sentence pursuant to § 3582(c)(2).  Nothing has changed since the Court entered its August 10, 2018 opinion denying Johnson's original request.  Accordingly, for the same reasons set forth in that opinion, the Court denies Johnson's request to run his sentences concurrently or award him credit of 30 months against his current sentence.

## IV.    CONCLUSION

For the reasons stated above, Johnson's motion for compassionate release (Dkt. 378) is denied.

SO ORDERED.

Dated:  March 4, 2021                          s/Mark A. Goldsmith
        Detroit, Michigan                      MARK A. GOLDSMITH
                                               United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 4, 2021.

                                               s/Karri Sandusky
                                               Case Manager